Ken Katsaris Leon County Sheriff Tallahassee
QUESTION:
May a law enforcement officer or agency reveal to the electronic or print media the name, age, address, and offense charged as to a juvenile offender pursuant to s. 39.12(7), F. S.?
SUMMARY:
Until legislatively or judicially determined otherwise, the provisions of s. 39.12(7), F. S., do not authorize or require a law enforcement agency or officer to disclose to the electronic or print media the name, age, and address of an alleged juvenile offender or the offense or violation of law with which such an alleged offender may be charged. Section 39.12(4) prohibits the disclosure of any and all information or knowledge obtained pursuant to ch. 39, F. S., in the discharge of official duty by any law enforcement agent to anyone other than those agencies or persons specifically designated in s. 39.12(4).
Your question is answered in the negative.
The Florida Public Records Law, ch. 119, F. S., declares it to be `the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person.' See s. 119.01; see also Shevin v. Byron Harless, Schaffer, Reid and Associates, Inc., Case Nos. 54,405 and 54,406 (Fla. Jan. 17, 1980), wherein the court stated that the Public Records Law limits public information to those materials that have been prepared with the intent of perpetuating, communicating, or formalizing knowledge. The act is directed to custodians of public records and requires them to permit inspection of whatever public records may be in their possession. See s. 119.07(1). Section119.07(3)(a), however, expressly exempts from the command of the Public Records Law `[a]ll public records which are presently provided by law to be confidential or which are prohibited from being inspected by the public. . . .' Section 119.07(3)(d) further exempts all criminal intelligence information and active criminal investigative information from public inspection and examination.Compare s. 119.07(3)(h).
In this regard, s. 39.12(3), F. S., provides in pertinent part that all official records required by ch. 39, F. S., are not open to public inspection and may only be inspected by certain designated persons or those found by the court to have a proper interest therein. In addition, s. 39.12(4) provides that
 All information obtained pursuant to [the Florida Juvenile Justice Act] in the discharge of official duty by any judge, any employee of the court, any authorized agent of the department, the Department of Corrections, or any law enforcement agent shall be confidential and shall not be disclosed to anyone other than the authorized personnel of the court, the department and its designees, the Department of Corrections, law enforcement, and others entitled under this chapter to receive that information, except upon order of the court. (Emphasis supplied.)
This provision does not appear, however, to be limited to public records as defined in s. 119.011(1), F. S., or in Shevin, supra, or those denominated in s. 39.12(2) and (3). Rather, it makes allinformation (or knowledge) obtained pursuant to ch. 39 in the discharge of official duty by `any law enforcement agent . . . confidential' (Emphasis supplied.) and prohibits the disclosure of any such information (or knowledge) to anyone other than those agencies and persons designated by and entitled thereto under ch. 39 `except upon order of the court.' Members or representatives of the electronic or print media are not so designated or entitled by the statute. The term `all information' is certainly broad enough to include the records of a law enforcement agency, as well as any other information or knowledge possessed by the agency or a member thereof, regardless of the form in which it is possessed. The word `all' is variously defined as meaning the whole amount or quantity of; as much as possible; and every. `Information' has been defined as something received or obtained through informing, as knowledge communicated by others or obtained from investigation, study, or instruction; knowledge of a particular event or situation.Webster's Third New International Dictionary. See also Words andPhrases for similar definitions. Consequently, I am compelled to conclude that s. 39.12(4) prohibits a law enforcement agency or a member thereof from divulging to a member of the electronic or print media any information (or knowledge) concerning an alleged juvenile offender, including his name, address, or the offense charged. Section 39.12(7), F. S., stipulates that the provisions of ch. 39, F. S., `shall not be construed to prohibit thepublication of the name and address of a child who is alleged to have committed a violation of law.' (Emphasis supplied.) This provision does not refer to or purport to amend or except anything from subsections (3) or (4). Absent a clear manifestation of legislative intent to do so, the amendment or repeal of a statute or any part thereof by implication is not favored. See Miami Water Works Local No. 654 v. City of Miami, 26 So.2d 194 (Fla. 1946); Dade County v. City of Miami, 82 So. 354 (Fla. 1919); and State v. Gadsden County, 58 So. 232 (Fla. 1912). The title of ch. 78-414, Laws of Florida, by which s. 39.12(7) was brought into the statutes, conveys no notice of any such intent to effect any amendment of or exception to the provisions of subsections (3) or (4) of s. 39.12. The term `publication' is not defined in the law. While a broad definition of `publication' might, in other contexts, conceivably countenance the issuance to the electronic or print media by your department of the name and address of a juvenile charged with a violation of law, I am of the view that the Legislature did not intend, nor does the language of subsection (7) evince any clear intent, for that term to be read in such an expansive fashion. Neither is there the slightest indication that subsection (7) *3983 was meant to effect any modification or repeal by implication of the terms of s. 39.12(3) or (4) within the context and for the purposes of ch. 39. To begin with, such a construction would be difficult to reconcile with the express provisions of s. 39.12(3) and (4), discussed above, and would fly in the face of the rule of statutory construction which states that a statute should be construed to give effect to every clause in it and to accord meaning and harmony to all its parts. State ex rel. City of Casselberry v. Mager, 356 So.2d 267 (Fla. 1978); Woodgate Development Corp. v. Hamilton Investment Trust,351 So.2d 14 (Fla. 1977); and State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971). Thus, in the context of ch. 39, the unamplified use of the word `publication' in subsection (7), in my opinion, is not clear enough to override the plain meaning of the prohibition found in subsections (3) and (4). See
White v. City of Coral Springs, Case No. 79-6671 (17th Jud. Cir., 1979), in which Judge Franza stated that `F.S. 39.12(7) which allows the press to publish the name of a child who is alleged to have committed a violation of the law does not could Section 4 . . . .' (Emphasis supplied.) Cf. ss. 119.07(3)(d) and (h) and 39.14(4) and (5), F. S.
When viewed in light of the legislative history, it is my opinion that s. 39.12(7), F. S., is nothing more than a recognition that the electronic or print media are free to broadcast or publish any truthful information which they obtain in a lawful manner. This comports with recent decisions of the United States Supreme Court construing the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, as precluding a state from prohibiting or penalizing, absent a state interest of the highest order, the publication of lawfully obtained, truthful information. See Smith v. Daily Mail Publishing Co., 61 L.Ed.2d 399 (1979); Landmark Communications, Inc. v. Virginia, 435 U.S. 829 (1978); Oklahoma Publishing Co. v. District Court, 430 U.S. 308 (1977); and Cox Broadcasting Corp. v. Cohn,420 U.S. 469 (1975). In fact, the conference committee which met to iron out the differences between the House and Senate versions of the 1978 revision of ch. 39, F. S., of which s. 39.12(7) was a part, specifically addressed this issue. Subsection (7) had not been a part of either the Senate or House version of the revision but was proposed during the conference committee meeting held on June 1, 1978. The recorded statements of committee members clearly indicate that their intent in proposing the new subsection was not to open records or information and knowledge made confidential by other subsections or to grant the electronic or print media as right of access to confidential information. It was merely intended to be a restatement of the law relating to freedom of the press as understood by the members of that committee.
When read together, then, subsections (3), (4), and (7) of s. 39.12, F. S., disclose a legislative intent to make certain official records and information or knowledge obtained in making those records or in the discharge of official duties under ch. 39, F. S., confidential and privileged while at the same time recognizing that the electronic and print media are free to publish any truthful information which they obtain in a lawful manner. Members of the electronic or print media are still free to use ordinary investigative techniques to uncover the news, and s. 39.12(7) recognizes their right to publish such lawfully obtained information even as it relates to juveniles. A representative of the electronic or print media is as free as any member of the public to sit in an open courtroom and listen to the proceedings which are conducted there. Sections 39.09(1)(c) and 39.408(1)(c) clearly provide that juvenile adjudicatory hearings, with certain exceptions not here material, `shall be open to the public, and no person shall be excluded therefrom except on special order of the court.' And ss. 39.09(4) and 39.408(3) expressly permit the publication of the proceedings in such hearings. Again, s. 39.12(7) recognizes that the news media are free to publish information obtained in this fashion. Chapter 39 is not an attempt to prohibit or penalize the publication of news. It merely removes certain official governmental records and information or knowledge obtained either in making those records or in the discharge of official duties pursuant to ch. 39 from the view of the public and the electronic or print media.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General