863 So.2d 320 (2003)
ROYAL WORLD METROPOLITAN, INC., Appellant,
v.
The CITY OF MIAMI BEACH, Appellee.
No. 3D02-3161.
District Court of Appeal of Florida, Third District.
July 16, 2003.
Rehearing Denied January 16, 2004.
Brigham Moore and Amy Brigham Boulris, Miami; Hopping Green & Sams and Gary K. Hunter, Jr. and D. Kent Safriet (Tallahassee), for appellant.
Boies, Schiller & Flexner and Jennifer G. Altman, Fort Lauderdale, and Patricia Melville; Murray Dubbin, City Attorney, and Robert Dixon and Deborah J. Turner, Assistant City Attorneys, for appellee.
Pacific Legal Foundation and Frank A. Shepherd, as Amicus Curiae for appellant.
*321 Before LEVY, RAMIREZ and WELLS, JJ.
LEVY, Judge.
Royal World Metropolitan, Inc. ("Royal World") brought suit against the City of Miami Beach ("the City") pursuant to The Bert J. Harris, Jr., Private Property Rights Protection Act ("the Harris Act" or "the Act"), Section 70.001, Florida Statutes, contending that the City's newly-adopted ordinances had the effect of denying Royal World all economically viable use of its property. The City filed a Motion for Summary Judgment, arguing that Royal World could not maintain the action in light of Section 13 of the Act which provides: "This section does not affect the sovereign immunity of government." § 70.001(13), Fla. Stat. (1999). The trial court agreed with the City and granted Final Summary Judgment. We reverse.
Legislative intent is the polestar that guides the court's statutory construction analysis. Reynolds v. State, 842 So.2d 46, 49 (Fla.2002); State v. J.M., 824 So.2d 105, 109 (Fla.2002). To this end, a statute should be construed and applied to give effect to the legislative intent, regardless of whether such construction varies from the statute's literal meaning. Deason v. Florida Department of Corrections, 705 So.2d 1374, 1375 (Fla.1998); see also Department of Environmental Protection v. Millender, 666 So.2d 882, 885-886 (Fla. 1996) (quoting Plante v. Smathers, 372 So.2d 933, 936 (Fla. 1979) "Intent is traditionally discerned from historical precedent, from the present facts, from common sense, and from an examination of the purpose the provision was intended to accomplish and the evils sought to be prevented.").
Rules of construction also require that courts look for a reason to uphold the acts of the legislature and adopt a reasonable view that will do so. Department of Legal Affairs v. Rogers, 329 So.2d 257, 263 (Fla.1976). Thus, if a statute is fairly susceptible of two constructions, one of which will give effect to it, and the other which will defeat it, the former construction is preferred. See Id. Similarly, when conflicting provisions, that cannot be reconciled, exist within the same statute, the most recent expression contained in the statute normally prevails, but if the last expression in one section is plainly inconsistent with preceding sections which conform to the legislature's obvious policy and intent, the later section must be construed as to give it effect consistent with such other sections and the policy they indicate. Sharer v. Hotel Corp. of America, 144 So.2d 813, 816-817 (Fla. 1962); Allstate Ins. Co. v. Rush, 777 So.2d 1027, 1033 (Fla. 4th DCA 2000); Jordan v. Food Lion, Inc., 670 So.2d 138, 140 (Fla. 1st DCA 1996); Millender, 666 So.2d at 886.
In the instant case, the legislative intent of the Harris Act is evident within the first section of the Act which clearly provides that the statute was intended to protect private property interests against "inordinately burdensome" governmental regulation, which do not necessarily amount to a constitutional taking. § 70.001(1), Fla. Stat. (1999).
The Legislature recognizes that some laws, regulations, and ordinances of the state and political entities in the state, as applied, may inordinately burden, restrict, or limit private property rights without amounting to a taking under the State Constitution or the United States Constitution. The Legislature determines that there is an important state interest in protecting the interests of private property owners from such inordinate burdens. Therefore, it is the intent of the Legislature that, as a separate *322 and distinct cause of action from the law of takings, the Legislature herein provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.

§ 70.001(1), Fla. Stat. (1999)(emphasis added).
A literal reading of Section 13, as advocated by the City, is in direct contravention of the statute and its purpose. In sum, this literal reading of Section 13 negates everything the legislature purports to achieve through the enactment of the Act. See Sharer, 144 So.2d at 817.
In Jones v. Brummer, 766 So.2d 1107 (Fla. 3d DCA 2000), this Court considered a similar argument. In Jones, the Appellant/Employee brought suit against her Employer, the Public Defender, under Florida's Civil Rights Act. Her discrimination Complaint was dismissed by the trial court on the ground that the Public Defender was immune from suit. On appeal, this Court reversed. The Court considered the legislature's inclusion of "`the state; or any governmental entity or agency' within the definition of a `person' who may be an `employer' subject to civil liability for unlawful employment practices under the Act." Jones, 766 So.2d at 1108. Additionally, the Court looked to other sections within the Act that referred to governmental entities, and an additional subsection which cross-referenced a limitation on governmental liability. See Jones, 766 So.2d at 1108.
We conclude[d] that the statutory provisions..., read together, evidence legislative intent that civil actions for damages under Florid's Civil Rights Act be prosecuted against the state, its agencies or subdivisions. If the legislature had not intended that civil actions for damages be prosecuted in such a manner, there would be no reason for the inclusion of such public entities within the definition of employer....
Jones, 766 So.2d at 1109.
Similarly, in the instant case, we find that a fair reading of Section 70.001(1), Florida Statutes, evinces a sufficiently clear legislative intent to waive sovereign immunity as to a private property owner whose property rights are inordinately burdened, restricted, or limited by government actions where the governmental regulation does not rise to the level of a taking under the Florida and United States Constitutions.[1]See Jones, 766 So.2d at 1108. A literal reading of Section 13 is inconsistent with the clear intent and purpose of the Act, as it would be absurd to interpret Section 13 to undo everything the Act is designed to achieve. Since it is impossible under the appropriate rules of statutory construction to give Section 13 literal effect within the meaning of the statute, its application must construed consistent with the general purpose and intent of the Act. See State ex rel. City of Casselberry v. Mager, 356 So.2d 267, 268-69 (Fla.1978); see also Seminole County v. City of Lake Mary, 347 So.2d 674 (Fla. 4th DCA 1977). We therefore hold that Section 13 does not bar a private property rights claim pursuant to the Harris Act, but merely preserves the sovereign immunity benefits the City in the instant case, and governmental entities in general, otherwise enjoy.
In light of the clear intent of the statute and the pertinent rules of statutory construction, the trial court erred in construing *323 Section 70.001(13), Florida Statutes, to bar a cause of action against a governmental agency. Accordingly, the Order granting Final Summary Judgment should be reversed and the matter remanded for further proceedings consistent with the Court's opinion.
Reversed and remanded.
NOTES
[1] The constitutionality of the Harris Act was not raised as an issue in this case and we express no views thereon.